**Jesse Merrithew**, OSB No. 074564
Email: jesse@lmhlegal.com
**Sara Long**, OSB No. 224433
Email: saralong@lmhlegal.com
Levi Merrithew Horst PC
610 SW Alder Street, Suite 415
Portland, Oregon 97205
Telephone: (971) 229-1241
Facsimile: (971) 544-7092

**Attorneys for Plaintiff**

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **SADIE KING**, <br><br> Plaintiff, <br><br> vs. <br><br> **EDWIN DIAZ, an individual, and MULTNOMAH COUNTY, a political subdivision of the State of Oregon,** <br><br> Defendants. | Case No.  3:26-cv-00664 <br><br> **COMPLAINT** <br> **Civil Rights Violation** <br> **Cruel and Unusual Punishment** <br> **Substantive Due Process** <br> **(42 U.S.C. § 1983)** <br><br> **Oregon Tort Claims Act** <br> **(Or. Rev. Stat. § 30.260 *et seq*)** <br> **Negligence** <br><br> **Jury Trial Demanded** |

Plaintiff Sadie King, by and through her attorneys, alleges as follows:

### NATURE OF ACTION

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and Or. Rev. Stat.

§ 30.260 *et seq* by Plaintiff Sadie King. Ms. King was incarcerated at the Multnomah County

COMPLAINT - 1
(Case No. 3:26-cv-00664)

Detention Center ("MCDC") when Defendant Edwin Diaz, a Multnomah County Sheriff's Office corrections deputy, sexually abused her. Ms. King was not Diaz's first victim. He took advantage of severe and long-term staffing shortages at MCDC to volunteer to work overtime shifts in female units, where he worked largely unsupervised and targeted vulnerable female adults in custody ("AICs") for coercive sexual relationships. Defendant Multnomah County knew for years the danger these staffing shortages posed, and it knew that Diaz specifically posed a threat to female AICs. Yet the County did nothing. Following an anonymous tip to detectives, Diaz was indicted on 25 counts of custodial sexual misconduct, sexual abuse, and official misconduct based on his abuse of Ms. King and a second victim. Following his arrest, several other victims reached out to detectives to report similar abuse. Defendant Diaz violated Ms. King's Fourteenth and Eighth Amendment rights under the United States Constitution, and Defendant Multnomah County's policies and practices were the moving force behind those violations. As a result of Defendants' acts and omissions, Ms. King suffered economic and noneconomic damages and is entitled to damages and an award of attorney's fees and costs.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over Plaintiff's claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331 and 1343 because the causes of action arise under 42 U.S.C. § 1983. This Court has supplemental jurisdiction over Plaintiffs' pendent state law claim under 28 U.S.C. § 1367.

3.    Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Oregon and because Defendants are subject to personal jurisdiction in the District of Oregon.

COMPLAINT - 2
(Case No. 3:26-cv-00664)

**LEVI MERRITHEW HORST PC**
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

**TORT CLAIM NOTICE**

4.      Notice of this claim was timely provided to Multnomah County on July 24, 2025.

**PARTIES**

5.      Plaintiff Sadie King is, and at all relevant times was, a resident of the state of Oregon.

6.      Defendant Multnomah County is an Oregon county. Multnomah County operates a jail, known as the Multnomah County Detention Center ("MCDC"). Multnomah County has a duty to provide for the health and safety of all persons incarcerated at MCDC.

7.      Defendant Edwin Diaz is, and at all relevant times was, employed by Defendant Multnomah County as a Multnomah County Sheriff's Office ("MCSO") corrections deputy and worked at MCDC. All conduct alleged below occurred within the course and scope of his employment for Defendant Multnomah County under color of state law. He is sued in his individual capacity.

**ABUSE OF MS. KING**

8.      In March through September of 2024, Ms. King was incarcerated at MCDC to serve time for a parole sanction. She was 33 years old at the time.

9.      Ms. King had a history of severe trauma and sexual victimization, substance abuse, homelessness, and mental health issues, all of which contributed to her criminal charges.

10.      Ms. King had previously been detained at MCDC and had disclosed her history of trauma and sexual victimization to various medical and mental health staff there.

11.      MCDC placed Ms. King in unit 8B, which houses female adults in custody ("AICs") on mental health and suicide watch, disciplinary, and administrative segregation. Unit 8B is one of the most challenging units at MCDC and houses some of its most vulnerable AICs.

COMPLAINT - 3
(Case No. 3:26-cv-00664)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

12.    Defendant Diaz had been employed as a corrections deputy for Multnomah County since approximately 2018. He was 53 years old in 2024. Diaz normally worked as a deputy in the Close Street Supervision program, part of Multnomah County's pretrial release system. Close Street provides structured supervision for people on pretrial release, and its office is located within the building that houses the jail.

13.    Due to severe and ongoing staffing shortages within MCSO, Diaz frequently worked overtime shifts at MCDC. In that position, Diaz was tasked with the health, safety, and care of female AICs at MCDC. He was in a position of authority and power over female AICs and was meant to have a relationship of trust with them. The female AICs' day-to-day livelihood and safety depended on the decisions and actions of the corrections deputies, including Diaz.

14.    Diaz volunteered to work his shifts at MCDC specifically in the units housing vulnerable female AICs – units 8A and 8B. On information and belief, Diaz chose to work in these units to target, groom, and sexually assault vulnerable female AICs. Diaz seemed particularly interested in female AICs who had a history of discipline or credibility issues.

15.    As early as 2022, MCDC had received at least one report from a female AIC that Diaz had sexually assaulted her. Defendant Multnomah County failed to adequately investigate or discipline Diaz or to take any measures to protect female AICs from Diaz. He was allowed to continue working, largely unsupervised, in the female units.

16.    During the time surrounding Diaz's abuse of Ms. King, he volunteered to work more than 90% of his overtime shifts in unit 8B, where Ms. King was housed. Again, because of staffing shortages, Diaz would typically be the only deputy working in the unit during his shift.

17.    Diaz took advantage of Ms. King's vulnerability as an AIC, an addict, and a person with a history of severe trauma, to target her for a coercive sexual relationship.

COMPLAINT - 4
(Case No. 3:26-cv-00664)

18.     Diaz paid special attention to Ms. King and sought to build trust with her. He told her that he would help take care of her when she was released, take her dancing, help her with her passport, and take her to substance abuse treatment. He gave her special treatment, including extra time out of her cell, extra phone calls and meals, and allowing her to perform work duties in the unit despite her disciplinary issues and instructions from other deputies not to use Ms. King as a worker in the unit. By making Ms. King a worker in the unit, Diaz was able to gain additional access to her as she cleaned cells.

19.     Diaz demanded things in return for his special treatment of Ms. King. He would come up to Ms. King's cell door, direct her to move to the back of her cell where the cameras could not see her, and then direct her to expose her breast and buttocks to him. Ms. King did not feel she could refuse these requests and feared retaliation from Diaz if she did.

20.     Diaz's behavior escalated. He began writing Ms. King sexually explicit letters and insisted that she return the letters to him after she read them. He would follow Ms. King into the cells she was cleaning and fondle her, out of sight of video surveillance. He began calling Ms. King at the jail on unrecorded phone lines, including the phone line dedicated for attorney calls. He would masturbate while Ms. King was on the phone, tell her what he was doing, and direct her what to say to him.

21.     Because of Diaz's position of power over Ms. King and his manipulation of her, she felt that she had no choice but to continue engaging in this "relationship" with him. She feared what Diaz and other deputies would do to her if she turned him away. She was scared to tell any other deputies, as they tended to cover up for one another and might also retaliate against her.

22.     During this same time period, Diaz was targeting and sexually harassing another female AIC in unit 8B. He used the same playbook, showing her favoritism, passing her notes,

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

kissing her, and watching her while she showered. He violently raped her in her cell in March or April of 2024. She attempted to report Diaz's assault to a sergeant at MCDC, but he refused to report the allegations.

23. On or about September 1, 2024, Ms. King was cleaning cells in unit 8B. While Ms. King was in cell #9, the inside of which was not visible on surveillance cameras, Diaz entered the cell, grabbed Ms. King's neck, forcefully kissed her, bit her lip and drew blood, shoved his hand down her pants, and inserted his fingers into her vagina. Ms. King pushed Diaz off her and left the cell.

24. Shortly after, Ms. King told Diaz that he had hurt her. He apologized and said he was just so excited to have her at last.

25. Ms. King later called her mother and told her that someone had hurt her, but that she did not want to report it because she was scared of what had just happened and fearful of what Diaz or other jail staff would do to her if she reported it.

26. On or about September 13, 2024, Ms. King was released from custody. Diaz was waiting for her in the jail lobby. He told her he wanted to write down his contact information for her, and he went to the officer's station to do so. Once he left, Ms. King told other MCDC staff present to tell Diaz she was fine and was leaving.

27. But Diaz went to find Ms. King outside of the building. He approached her on the street, implored her to keep in contact with him, and asked for a hug and a kiss. Ms. King was uncomfortable and unsure what to do, so allowed him to hug and kiss her. Diaz only left when Ms. King made clear that she was leaving with her friends who had met her there.

28. Following Ms. King's release, Diaz stopped volunteering to work on unit 8B.

COMPLAINT - 6
(Case No. 3:26-cv-00664)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

29.    On or about October 16, 2024, MCSO Detective Dylan Lerch received an anonymous note alleging misconduct by Diaz, including meeting up with "prostitutes he meets in jail," watching female AICs shower, doing special favors for female AICs, and mistreating female AICs he thought were ugly, did not "act like sex objects," or who had their own opinions.

30.    In partnership with Detective Jordan Zaitz at Portland Police Bureau, Detective Lerch began investigating Diaz. Ms. King was unaware of this investigation, and detectives were unable to locate her until she returned to custody in March 2025. Detectives then interviewed Ms. King, and video and witness interviews corroborated her account.

31.    Around the same time, the woman Diaz raped in her cell in March or April of 2024 reported the assault while she was in custody in the Oregon Department of Corrections. The Department then notified MCSO of the report.

32.    On June 16, 2025, a Grand Jury heard evidence of Diaz's abuse and indicted him on several counts for his abuse of Ms. King and the aforementioned additional victim. As to Ms. King, Diaz was indicted for Custodial Sexual Misconduct in the First Degree, ORS 163.452; Custodial Sexual Misconduct in the Second Degree, ORS 163.454; Sexual Abuse in the Second Degree, ORS 163.425; and thirteen counts of Official Misconduct in the First Degree, ORS 162.415.

33.    Following her cooperation with investigators and her testimony at Grand Jury, MCDC staff retaliated against Ms. King by, among other things, requiring her to go back to unit 8B after she told them she had been assaulted there, placing her in a cell with feces in it and requiring her to clean it herself, accusing her of rule violations and asking her how it felt to be accused of something she did not do, and taking away her pictures of her deceased infant son.

COMPLAINT - 7
(Case No. 3:26-cv-00664)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

34. The retaliation was significant enough that Ms. King was transferred from MCDC to Clackamas County Jail for her protection. She continued to suffer retaliation from staff at Clackamas County Jail.

35. Diaz was arrested on June 20, 2025. Following his arrest, MCSO released a statement regarding Diaz and the allegations against him. The statement included Diaz's booking photo, noted that detectives believe there were other victims, and urged those victims or anyone else with information to contact the detectives.

36. Since the indictment, several other people have contacted detectives alleging further misconduct by Diaz while they were incarcerated at the jail.

37. In July 2025, Diaz was released from custody and remains out of custody at the time of this filing.

38. Diaz was permitted to retire in August of 2025.

## ALLEGATIONS AGAINST MULTNOMAH COUNTY

39. Defendant Multnomah County has a duty to provide for the health and safety of all persons held in its corrections facilities. The county agency responsible for correctional services is MCSO, which operates MCDC.

40. The Prison Rape Elimination Act of 2003 (PREA) requires jails such as MCDC to maintain a zero-tolerance policy towards sexual abuse and sexual harassment and to implement certain standards and meet certain requirements to comply with that policy, including, among others, the following:

    a. Develop, document, and comply with a staffing plan for adequate levels of staffing and video surveillance to protect against sexual abuse, 28 C.F.R. § 115.13(a);

    b. Take into consideration the following when determining adequate staffing levels:

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

    a.  Generally accepted detention and correctional practices;

    b.  Any judicial findings of inadequacy;

    c.  Any findings of inadequacy from Federal investigative agencies;

    d.  Any findings of inadequacy from internal or external oversight bodies;

    e.  All components of the physical facility, including "blind-spots" and areas where staff or inmates may be isolated;

    f.  The composition of the inmate population; and

    g.  The number and placement of supervisory staff, 28 C.F.R. § 115.13(a);

c.  When a staffing plan is not complied with, document and justify all deviations from the plan, 28 C.F.R. § 115.13(b);

d.  Conduct and document unannounced supervisor rounds to identify and deter staff sexual abuse and harassment, for day and night shifts, and prohibit staff from alerting other staff that such rounds occurring, 28 C.F.R. § 115.13(d);

e.  Train employees to ensure compliance with PREA guidelines, including training on the dynamics of sexual abuse in confinement, common reactions of sexual abuse victims, how to detect and respond to signs of threatened or actual sexual abuse, how to avoid inappropriate relationships with inmates, how to communicate effectively and professionally with inmates, and how to comply with mandatory abuse reporting, 28 C.F.R. § 115.31;

f.  Complete an administrative or criminal investigation for all allegations of sexual abuse and sexual harassment, 28 C.F.R. § 115.22(a);

COMPLAINT - 9
(Case No. 3:26-cv-00664)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

g.  When an allegation involves potentially criminal behavior, refer the allegation to an agency with the legal authority to conduct a criminal investigation, 28 C.F.R. § 115.22(b);

h.  Require staff to accept reports made verbally, in writing, anonymously, or from third parties and promptly document any verbal reports, 28 C.F.R. § 115.51(c);

i.  Require staff to immediately report any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment, retaliation for reporting incidents, and staff neglect or violation of responsibilities that may have contributed to an incident or retaliation, 28 C.F.R. § 115.61(a);

j.  Take immediate steps to protect inmates subject to substantial risk of imminent sexual abuse, 28 C.F.R. § 115.62; and

k.  Protect inmates who report sexual abuse from retaliation, 28 C.F.R. § 115.67.

41.  Defendant Multnomah County failed to comply with these requirements and its own policies in several ways, including by failing to adequately investigate and act on prior allegations of sexual abuse and sexual harassment made against Defendant Diaz.

42.  Defendant Multnomah County further failed to comply with these requirements by allowing severe and persistent staffing shortages to continue for almost a decade, ignoring Multnomah County Corrections Grand Jury Reports and external professional reviews that have highlighted the dire need for appropriate staffing levels at MCDC.

43.  Since at least 2017, those reports have referred to the staffing shortages as "critical," a "primary concern," a "core issue," "catastrophic at times," and "both a chronic and acute crisis."

COMPLAINT - 10
(Case No. 3:26-cv-00664)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

44.    At the time of Diaz's abuse of Ms. King, Defendant Multnomah County had not conducted a staffing study since 2006, leaving the County without a plan for adequate levels of staffing and video surveillance to protect against sexual abuse of the women in its custody.

45.    For years, Defendant Multnomah County has heavily relied on overtime as a default way to fill staffing gaps and has for years been warned that this is an unsustainable practice that contributes to an environment that is unsafe for AICs.

46.    Grand jury testimony from the 2024 Corrections Grand Jury Report suggests that there is no apparent structure of responsibility and accountability in addressing Human Resources issues that have contributed significantly to the ongoing staffing shortages.

47.    Defendant Multnomah County's policy of operating with severe staffing shortages made it virtually inevitable that jail staff would sexually abuse vulnerable female AICs such as Plaintiff.

48.    Diaz was able to work in Ms. King's unit because of Defendant Multnomah County's custom and practice of maintaining insufficient staffing levels and relying on overtime to operate its facility. He was able to choose which unit to work on, allowing him to target the most vulnerable AICs, and to coerce those AICs with things like out-of-cell time that they were not getting regularly due to staffing shortages.

49.    Because of the staffing shortages, Diaz was typically the only deputy on the unit, allowing him to do what he pleased with minimal oversight or supervision.

50.    Defendant Multnomah County was well aware of the risks inherent in not having a modern staffing plan and sufficient staffing for years and refused to act, demonstrating a deliberate indifference to Plaintiff's and other female AICs' right to bodily privacy and integrity and their right to be free from sexual abuse.

COMPLAINT - 11
(Case No. 3:26-cv-00664)

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Fourteenth Amendment Violation**
**Right to Bodily Privacy and Integrity**
**Against Defendant Diaz**

51.     Plaintiff realleges and incorporates by reference paragraphs 1-50.

52.     At all relevant times, Defendant Multnomah County employed Defendant Diaz as a corrections deputy at MCSO and/or MCDC.

53.     Defendant Diaz was acting under color of state law when he engaged in the alleged wrongful conduct.

54.     Plaintiff was incarcerated at MCDC at the time Defendant Diaz engaged in coercive and abusive sexual conduct with her.

55.     During her incarceration, Plaintiff retained a right under the Fourteenth Amendment to the United States Constitution to bodily privacy and integrity.

56.     Defendant Diaz repeatedly demanded that Plaintiff expose her buttocks, genitals, or breasts and observed her unclothed body with no legitimate penological or government justification or objective.

57.     Defendant Diaz's viewing of Plaintiff's unclothed body was not infrequent, casual, or from a distance.

58.     Defendant Diaz acted for his own sexual gratification.

59.     Plaintiff should be awarded her reasonable attorney fees and costs against Defendant Diaz pursuant to 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Eighth Amendment Violation**
**Cruel and Unusual Punishment – Sexual Abuse**
**Against Defendants Diaz**

60.     Plaintiff realleges and incorporates by reference paragraphs 1-59.

COMPLAINT - 12
(Case No. 3:26-cv-00664)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

61.     At all relevant times, Defendant Multnomah County employed Defendant Diaz as a corrections deputy at MCSO and/or MCDC.

62.     Defendant Diaz was acting under color of state law when he engaged in the alleged wrongful conduct.

63.     Plaintiff was incarcerated at MCDC at the time Defendant Diaz engaged in coercive and abusive sexual conduct with her.

64.     Defendant Diaz sexually abused Plaintiff without legitimate penological justification by demanding that she expose her intimate parts to him; observing her unclothed body and intimate parts; kissing and fondling her; calling her on the phone in her unit and masturbating while he had sexually explicit conversations with her; and by forcibly kissing her and penetrating Plaintiff's vagina with his finger.

65.     Defendant Diaz acted for his own sexual gratification.

66.     Plaintiff should be awarded her reasonable attorney fees and costs against Defendant Diaz pursuant to 42 U.S.C. § 1988.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Eighth and Fourteenth Amendments**
***Monell* Claims**
**Against Defendant Multnomah County**

67.     Plaintiff realleges and incorporates by reference paragraphs 1-66.

68.     On information and belief, at all relevant times, Defendant Multnomah County had the following policies, customs, and/or practices, that were the moving force behind and resulted in Plaintiff's harm:

   a. Insufficient investigations into reports alleging staff sexual abuse or sexual harassment of AICs;

COMPLAINT - 13
(Case No. 3:26-cv-00664)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

b.  Insufficient security and monitoring equipment, such as video surveillance, in the female modules of MCDC;

c.  Improper or insufficient implementation, monitoring, and sustaining of PREA standards;

d.  Insufficient staffing levels at MCDC;

e.  Reliance on mandatory overtime to fill staffing gaps;

f.  Inadequate supervision of corrections deputies' one-on-one interactions with AICs, including in locations unmonitored by video surveillance;

g.  Facilitating a general culture in which coercive sexual conduct between corrections deputies and female AICs proliferated;

h.  Facilitating a general culture in which deputies "protected" other deputies from accountability for engaging in coercive sexual conduct and relationships with AICs; and

i.  Facilitating a general culture in which deputies retaliated against AICs for speaking with law enforcement or otherwise reporting coercive sexual conduct between deputies and AICs.

69.  Defendant Multnomah County knew that the above-described policies, customs, and/or practices made it virtually inevitable that corrections deputies would sexually harass and sexually abuse female AICs such as Plaintiff, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

70.  Defendant Multnomah County maintained the above-described policies, customs, and/or practices with a deliberate indifference to the substantial risk they created.

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

71.    Defendant Multnomah County did not take reasonable steps to abate this substantial risk.

72.    As a direct result of the above-described policies, customs, and/or practices, Plaintiff was sexually harassed and abused by Defendant Diaz, in violation of her Eighth and Fourteenth Amendment rights under the United States Constitution.

73.    Plaintiff should be awarded her reasonable attorney fees and costs against Defendant Diaz and Defendant Multnomah County pursuant to 42 U.S.C. § 1988.

**FOURTH CLAIM FOR RELIEF**
**Oregon State Law – Negligence**
**Against Defendant Multnomah County**

74.    Plaintiff realleges and incorporates by reference paragraphs 1-73.

75.    By taking custody of Plaintiff, Defendant Multnomah County entered a special relationship with Plaintiff and, as such, owed Plaintiff a heightened duty of care to provide for a safe environment and protect her from injury while in Defendant Multnomah County's custody and care.

76.    Additionally or alternatively, Defendant Multnomah County created a foreseeable risk that Plaintiff and female AICs like Plaintiff would suffer the type of harm that Plaintiff eventually suffered by unreasonably acting or failing to act in one or more of the following ways:

a. Failing to investigate properly or at all reports of sexual contact and/or inappropriate sexual conduct between Defendant Diaz and Plaintiff and/or other female AICs;

b. Failing to address recommendations for AIC safety made by the Multnomah Correctional Grand Jury;

c. Failing to assess modern staffing needs at MCDC and develop a staffing plan that provides adequate levels of staffing to protect AICs from sexual abuse;

COMPLAINT - 15
(Case No. 3:26-cv-00664)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

d.  Failing to reach or maintain minimally adequate staffing levels at MCDC to safely operate the facility;

e.  Failing to implement a structure of responsibility and accountability in addressing hiring and human resources issues;

f.  Failing to have sufficient security and monitoring equipment, such as video cameras and adequate sightlines, at MCDC to deter such abuses;

g.  Failing to properly implement, monitor, and sustain PREA standards;

h.  Failing to adequately supervise Defendant Diaz's interactions with Plaintiff and other female inmates;

i.  Failing to prohibit one-on-one interactions between deputies and AICs in areas unmonitored by video surveillance;

j.  Failing to properly supervise deputies' one-on-one interactions with AICs;

k.  Failing to have sufficient abuse reporting practices in place to allow AICs to confidently and safely report abuses by corrections deputies without fear of retaliation;

l.  Failing to train staff members in how to recognize, report, and respond to reports of and witnessing of inappropriate sexual conduct between deputies and AICs; and

m.  Failing to redress a general culture in which sexual conduct between corrections deputies and female AICs proliferated, deputies "protected" other deputies from accountability for such conduct, and deputies retaliated against AICs for reporting such conduct.

77.     Plaintiff had a legally protected interest in being free from sexual abuse and harassment by deputies in charge of her safety and wellbeing.

COMPLAINT - 16
(Case No. 3:26-cv-00664)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

78.    Until detectives interviewed Plaintiff in March of 2025, she was unaware that Diaz had sexually abused other female AICs and that Defendant Multnomah County was aware of and failed to sufficiently investigate other reports about Diaz's conduct. Plaintiff was likewise unaware until that time of Defendant Multnomah County's above-described negligence.

79.    Defendant Multnomah County's failure to act in the above-described ways was unreasonable in light of the risk it created for Plaintiff and other female AICs. As a direct and foreseeable result of Defendant Multnomah County's negligence, Plaintiff suffered the injuries and incurred the damages described above and below.

## DAMAGES

As a direct and proximate result of the conduct of the Defendants, Plaintiff suffered economic and noneconomic damages, including:

    a.    Physical injury;

    b.    Emotional injury;

    c.    Pain and suffering;

    d.    Humiliation and embarrassment;

    e.    Fear; and

    f.    Loss of her civil rights to bodily privacy and integrity and to be free from cruel and unusual punishment

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court will enter a Judgment in her favor, and against Defendants, as follows:

A.    Grant Plaintiff compensatory damages against Defendants in an amount to be determined at trial;

COMPLAINT - 17
(Case No. 3:26-cv-00664)

LEVI MERRITHEW HORST PC
610 SW ALDER ST. SUITE 415
PORTLAND, OR 97205
T: 971.229.1241 | F: 971.544.7092

B.  Award Plaintiff reasonable costs, expenses, and attorney's fees;

C.  Grant Plaintiff such further relief as this Court deems just and equitable under the circumstances.

**JURY DEMAND**

Plaintiff hereby demands a jury trial.

**DATED** this 3rd day of April, 2026.

By: s/ Sara Long
**Sara Long**, OSB No. 224433
**Jesse Merrithew**, OSB No. 074564

Of Attorneys for Plaintiff